**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | | |
|---|---|---|
| FORCEX, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 4:11-cv-00088-RAJ-TEM |
| | ) | |
| TECHNOLOGY FUSION, LLC | ) | |
| | ) | |
| | ) | |
| And | ) | |
| | ) | |
| | ) | |
| KELLY MCDOUGALL | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT FOR TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY AND PRELIMINARY INJUNCTION

Defendants, Technology Fusion, LLC ("Technology Fusion") and Kelly McDougall ("McDougall") (collectively "Defendants"), by and through undersigned counsel, provides as follows for its Response in Opposition to Plaintiff's Motion and Memorandum in Support for Temporary Restraining Order, Expedited Discovery and Preliminary Injunction.

### Preliminary Statement

Eighteen months after McDougall left the employ of ForceX, ForceX is now attempting to enforce a borrowed and unduly oppressive and overbroad non-compete agreement. The complaint alleges, amongst other things, that McDougall must honor a covenant not to compete in an agreement that was concocted by pulling together various provisions from another company's unrelated agreement based out of New York. The non-compete agreement is extraordinarily overbroad, restricting McDougall from working in *any* capacity for a competitor

1

or "an otherwise similar company" without ever defining what it is that Plaintiff does or what would be considered a "similar company." The non-compete extends for an excessive period of three-years despite the fact that McDougall worked at ForceX for less than half that period, and potentially extends to the entire world. Notwithstanding the overbreadth of the non-compete, McDougall has not and is not competing with ForceX, and does not possess any of his former employer's trade secrets despite Plaintiff's unsupported and non-specific claims to the contrary. This lawsuit seeks to impose an improper restraint on trade and attempts to thwart McDougall's legitimate attempt to earn a livelihood, and therefore any injunctive relief should be denied.

### Background

Kelly McDougall was previously employed by Plaintiff ForceX, Inc. ("ForceX) in the position of Vice President, Airborne Division. See Exhibit A, Declaration of Kelly McDougall ("McDougall Decl.") at ¶ 2. McDougall's duties were mainly limited to organizing the airborne division. Id. at ¶ 12. ForceX mainly operated in the field of designing/creating sensor interfaces to mapping applications that were intended to interface with airborne manned intelligence, surveillance, and reconnaissance ("ISR") missions to enable airborne crew members to convey video to the ground. Id. McDougall's brief employment with ForceX lasted from July 2008 to December 2009, approximately 17 months. Id. at ¶ 2. Midway through his tenure at ForceX, on or around February 26, 2009, McDougall was asked to sign an Employment, Confidential Information and Invention Assignment Agreement ("Agreement"). Id. at ¶ 4. The Agreement contained a covenant not to compete that forms the basis of Plaintiff's allegations.

In June 2010, six months after McDougall's departure from ForceX, he began operating Technology Fusion, LLC in Williamsburg, Virginia. Id. at ¶ 10. Technology Fusion is a one-person systems engineering company that provides consulting services to end users in the

2

defense contracting and military industry. Id. at ¶ 11.Unlike ForceX, Technology Fusion does not create or develop any products, but rather provides consulting services to end users by going out into the industry and finding and fusing existing technologies to create a solution for the customer's needs. Technology Fusion is limited to focusing on systems integration for smart phones and other mobile devices to support non-ISR functions. Id. at ¶ 13.

Since leaving ForceX, McDougall and/or Technology Fusion has not solicited or accepted work from any of ForceX's customers. Id. at ¶ 17. Additionally, McDougall and/or Technology Fusion did not develop and/or demonstrate a prototype ISR mapping application in May 2011, or at any other time since leaving the employ of ForceX. Id. at ¶ 16. McDougall and Technology Fusion have remained a one-person company deliberately choosing to operate in a line of work separate and apart from ForceX.

On May 25, 2011, ForceX filed its Complaint against Technology Fusion and Kelly McDougall alleging, among other things, breach of contract via the covenant not to compete and misappropriation of trade secrets. Subsequently, Plaintiff filed its Motion for Temporary Restraining Order, Expedited Discovery, and Preliminary Injunction. Defendants submit the following response in opposition and respectfully request this Court to deny Plaintiff's pending motions.

**Standard of Review**

When a federal Court is sitting in diversity, the Court is to apply federal law when considering whether to grant or deny a temporary restraining order. Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 811 (4th Cir. 1991). The grant or denial of a temporary restraining order is subject to the same standard as a preliminary injunction. See Commonwealth of Virginia v. Kelly, 29 F.3d 145, 147 (4th Cir. 1994). A plaintiff seeking to

obtain a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." <u>Winter v. Natural Resources Defense Council, Inc.</u>, 129 S.Ct. 365, 374 (2008).

Notably, Plaintiff incorrectly states the standard this Court is to apply when considering a temporary restraining order. Plaintiff seeks to have the Court follow the outdated standard articulated in <u>Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.</u>, 550 F.2d 189 (4th Cir. 1977). However, as recently stated by the Fourth Circuit Court of Appeals, "[b]ecause of its differences with the <u>Winter</u> test, the <u>Blackwelder</u> balance-of-hardship test may no longer be applied in granting or denying preliminary injunctions in the Fourth Circuit, as the standard articulated in <u>Winter</u> governs the issuance of preliminary injunctions not only in the Fourth Circuit, but in all federal courts." <u>Real Truth About Obama, Inc. v. Federal Election Com'n</u>, 575 F.3d 342, 347 (4th Cir. 2009). Therefore, Plaintiff's standard is incorrect and should not be followed by this Court.

Importantly, this Court should apply the <u>Winter</u> test as it is much stricter than the <u>Blackwelder</u> test in four significant respects. First, "[t]he <u>Winter</u> requirement that the plaintiff clearly demonstrate that it will *likely succeed* on the merits is far stricter than the <u>Blackwelder</u> requirement that the plaintiff demonstrate only a grave or serious question for litigation." <u>Id</u>. at 346-47 . Second, "<u>Winter</u> requires that the plaintiff make a clear showing that it is likely to be irreparably harmed absent preliminary relief" whereas "<u>Blackwelder</u> allows that upon a strong showing on the probability of success, the moving party may demonstrate only a possibility of irreparably injury, a standard explicitly rejected in <u>Winter</u>." <u>Id</u>. at 347. Third, the Supreme Court of the United States emphasized in <u>Winter</u> that courts "should pay particular regard for the public

consequences in employing the extraordinary remedy of injunction." Id. (quoting Winter, 129

S.Ct. at 376-77). Conversely, the Blackwelder test appears to not always consider the public

interest requirement. Id. Finally, "while Winter articulates four requirements, each of which must

be satisfied as articulated, Blackwelder allows requirements to be conditionally redefined as

other requirements are more fully satisfied." Accordingly, the test to be applied in granting or

denying a temporary restraining order is the much stricter Winter test, not the Blackwelder

balance-of-hardship test.

## Argument

1. **Virginia law should apply because the choice of law provision in the Agreement does not express the parties' true intent.**

Though the Agreement entered into between the parties purportedly has a choice of law

provision specifying New York law as the governing law, it is unreasonable under the

circumstances to enforce it. The Supreme Court has held that courts should not enforce forum

selection clauses and/or choice of law provisions if it "is shown by the resisting party to be

unreasonable under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10

(1972). Moreover, if it is shown that the parties did not intend for the designated law to govern

the agreement, a court should not enforce the choice of law provision. See Black v. Powers, 48

Va.App. 113, 127 (2007).

In this case, there is ample evidence showing that the parties did not intend for New York

law to apply. Here, neither party has a nexus to New York. The Plaintiff does not maintain an

office anywhere within the state of New York. See Exhibit A at ¶ 6. Also, during McDougall's

employment tenure at ForceX, McDougall did not do any work in New York nor was he aware

of ForceX engaging in any business operations in New York during that period. Id. Additionally,

upon information and belief, Defendants have reason to believe that the Plaintiff submitted the

5

Agreement to McDougall without properly reviewing and realizing the terms of the Agreement. Id. Based upon statements made by Joseph Calabrace, CEO of ForceX, Plaintiff has reason to believe the Agreement was composed of various provisions taken from another restrictive agreement used by a previous business partner of ForceX based out of New York. Id. Notably, the borrowed restrictive agreement contained the New York choice of law provision and was apparently one of the terms that remained untouched when ForceX borrowed the agreement.

Shortly after executing the Agreement, ForceX generated a new restrictive employment agreement which McDougall was asked to sign, but never did. Exhibit A. at ¶ 7; Exhibit A at Attachment 1 Thereafter, employees of ForceX were required to sign the new restrictive agreement. Id. at ¶ 8. Notably, this new agreement was significantly different than the Agreement executed by McDougall. The new agreement contained a short restrictive period of only 18 months compared to the 36 month period that appears in the Agreement executed by ForceX and McDougall. Id. at ¶ 9. Ultimately, the Agreement executed by McDougall contains provisions that Defendants believe do not express the true intentions of ForceX given that the provisions were borrowed from a New York affiliate, are not currently being used by ForceX and its current employees, and  ForceX insisted on McDougall signing the newer restrictive agreement while employed with the Company. Accordingly, since the New York governing law provision does not express the true intentions of the parties, Virginia law should apply to this matter.

In further support of the notion that Plaintiffs did not intend for New York to govern the agreement, Plaintiff, in its Motion and Memorandum in Support for Temporary Restraining Order, tacitly endorses Virginia law. See Plaintiff's Memorandum in Support of its Motion for Temporary Restraining Order, Expedited Discovery and Preliminary Injunction at  9. Plaintiff

recognizes that ForceX has no connection to New York and it should not have been the choice of law governing the Agreement. Moreover, the Agreement entered into between the parties has a forum-selection clause stating that the employee consents to the jurisdiction of the state and/or federal courts in the state of New York for any lawsuit brought relating to the Agreement. Plaintiff's intentional decision to bring suit in Virginia evidences that they made an error in choosing New York as the forum for any dispute and the same can be said about the choice of law provision. It would be unfair to let Plaintiff's selectively pick and choose portions of the Agreement to enforce or not enforce. It is clear that the parties did not intend for New York law to apply, and therefore, the law of the forum, Virginia, should apply.

2. **Plaintiff has failed to establish the requirements necessary for a temporary restraining order.**

Following the <u>Winter</u> test, Plaintiff is unable to establish grounds that warrant entry of a temporary restraining order because Plaintiff is not likely to succeed on the merits, will not be irreparably harmed if the injunction is denied and the injunction requested would not be in the public interest.

   a. **Plaintiff is not likely to succeed on the merits because the covenant not to compete is not narrowly drawn to protect Plaintiff's legitimate business interests as it restricts areas of work McDougall has never engaged in, unduly burdens McDougall's ability to earn a living due to the overbroad geographic and temporal scope of the covenant, and not in the public interest.**

Under Virginia law, "[a] non-competition agreement between an employer and an employee will be enforced if the contract is narrowly drawn to protect the employer's legitimate business interest, is not unduly burdensome on the employee's ability to earn a living, and is not against public policy." <u>Omniplex World Services Corp. v. U.S. Investigations Services, Inc.</u>, 270 Va. 246, 249 (2005). Analysis of these three interrelated factors additionally requires the courts

to consider "the restriction in terms of function, geographic scope, and duration." <u>Simmons v.</u>
<u>Miller</u>, 261 Va. 561, 581 (2001). Courts view restrictive covenants with disfavor as restraints on
trade and as such "the employer bears the burden of proof and any ambiguities in the contract
will be construed in favor of the employee." <u>Id</u>. Non-competes "have been upheld only when
employees are prohibited from competing directly with the former employer or through
employment with a direct competitor." <u>Id</u>.

### i.   The covenant not to compete is not narrowly drawn to protect the Plaintiff's legitimate business interests.

In this case, assessing the first step of whether the clause is narrowly drawn to protect
Plaintiff's legitimate business interests, the Court should find that it is overbroad, and hence,
unenforceable. The function of Plaintiff's covenant not to compete is unreasonable as it
encompasses areas of work in which McDougall has never engaged. Specifically, the covenant
not to compete states that McDougall shall not work with "any business in competition with or
otherwise similar to the Company's business." <u>See</u> Plaintiff's Complaint Exhibit A. No other
limiting language is in place addressing the work in which McDougall may engage. This
restraint is entirely too broad as it encompasses areas of work in which McDougall never took
part. By failing to define the type of work McDougall performed, this non-compete, on its face,
prohibits McDougall from working in *any* capacity with a business similar to Plaintiff. Such
covenants have consistently been held overly broad and unreasonable. <u>See</u> <u>Richardson v. Paxton</u>
<u>Co.</u>, 203 Va. 790, 795 (1962)(holding that because the covenant not to compete encompassed
activities in which the defendant never engaged in while employed with the plaintiff, it was
overly broad and unenforceable).

Additionally, the fact that the non-compete restricts McDougall from not only "business
in competition" with the Plaintiff, but also business "otherwise similar to the Company's

8

business" makes it overly broad. Without defining what it is the Plaintiff does, the language "otherwise similar to the Company's business" is extremely vague and ambiguous. Notably, "any ambiguities in the contract will be construed in favor of the employee." Omniplex World Services Corp., 270 Va. at 249. Because ForceX's business is not defined, the language "otherwise similar to the Company's business" could be construed to include any and all technology and/or government contractor companies in the world. This vague language clearly shows that the non-compete is overly broad to protect the employer's legitimate business interests, and therefore, will likely be held unenforceable.

Essentially, given that this covenant is not narrowly drawn and is not job specific for the work that McDougall did for the Plaintiff, if the Court were to enforce this covenant, McDougall would be prohibited from working in *any* position for a competitor or company "otherwise similar to the Company's business," from a janitor all the way to the president. This provision is so broad that McDougall could not even purchase stock from a publicly traded company if that company could be deemed a competitor or similar company to the Plaintiff as the covenant even restricts passive investment. See TradeStaff & Co. v. Nogiec, 77 Va. Cir. 77, 4 (Chesapeake Cir. Ct. 2008) (holding that the fact that the restrictive covenant was so broad so as to preclude the former employee from mere passive investment in a competitor made it overly broad and unenforceable). Importantly, a non-compete must be "reasonable in the sense that it is no greater than is necessary to protect an employer's legitimate interest." Lanmark Technology, Inc. v. Canales, 454 F.Supp.2d 524, 529 (E.D.Va. 2006) (quoting Richardson v. Paxton Co., 203 Va. 790, 794 (1962)).

Even assuming Plaintiff had a legitimate interest in protecting its confidential information, the covenant is much broader than what is necessary to protect the alleged

legitimate interest. The covenant here prohibits McDougall from working in *any* capacity for a competitor. As such, Virginia courts have appropriately held that where "the non-compete clause effectively prohibits the employee from working in virtually any capacity for a competitor, it is not narrowly drawn to protect the employer's legitimate business interest, and thus, is functionally overbroad." Lanmark Technology, 454 F. Supp 2d at 530. Accordingly, the covenant is excessively broad as it fails to narrowly define the type of work the Plaintiff is engaged in and/or define the work that McDougall is prohibited from engaging in.

### ii. The covenant not to compete unduly burdens McDougall's ability to earn a living because its three-year temporal scope is overly broad.

Relatedly, the temporal scope of the covenant not to compete is overly broad and unreasonable. Here, the non-compete applies for an extraordinary period of thirty-six (36) months even though McDougall only was there for less than half that period. Though it is not dispositive of the issue, courts in Virginia take into consideration the duration of the non-compete when assessing whether it is overly broad. Notably, Virginia courts have previously held that three-year restrictions are unduly lengthy and ultimately supported a finding of unreasonableness. See Simmons v. Miller, 261 Va. 561, 581 (2001) (holding that the three-year restriction upon competition was a lengthy duration and that coupled with the broad geographical scope made the non-compete unreasonable and unenforceable); See also Richardson, 203 Va. at 795 (holding that a three-year restrictive covenant was unduly harsh and unreasonable because it curtailed defendant's reasonable efforts to earn a livelihood).

In this case, the three-year restriction is particularly unreasonable given the fact that McDougall was only employed with the company for approximately eighteen months. Aside from the fact that courts have previously found three-year restrictions to be overly broad on their face, the restriction in this case is even more so given that it would be very unreasonable to

require McDougall to be restrained from employment for a period of time twice as long as the time he was with the restricting employer. Additionally, the fact that the Plaintiff implemented a different restrictive covenant, with a shorter restrictive period (18 months), evidences that they clearly recognized the three-year was longer than necessary to protect any business interest of the company. Thus, the Court should find the restrictive covenant overly broad and unenforceable on this ground in addition to the many other defects noted herein.

### iii.  The covenant not to compete unduly burdens McDougall's ability to earn a living because its geographic scope is overly broad.

Notwithstanding the fact that failure to narrowly draft the non-compete to only protect the Plaintiff's legitimate business interests renders it unenforceable, the non-compete clause here also fails the second step of the enforceability test because it unduly burdens McDougall's ability to earn a living. The non-compete has a geographic scope that is entirely overbroad. The geographic scope of the covenant not to compete encompasses "(i) all counties in the State of New York, (ii) all other states of the United States of America and (iii) all other countries of the world; provided that, with respect to clauses (ii) and (iii), the Company derives at least five percent (5%) of its gross revenue from such geographic area prior to the date of termination." As Plaintiff states in its Complaint, "ForceX is a leader in software applications development for airborne mission-execution platforms, battlefield and weapons management systems, and intelligence, surveillance, and reconnaissance operations." See Plaintiff's Complaint at ¶ 10. Thus, ForceX claims to conduct business all around the world. However, McDougall did not conduct business all around the world during his short tenure at the company. The non-compete is not limited to the geographic places McDougall worked while employed with the Plaintiff, and therefore it is overly broad. Importantly, "the Supreme Court of Virginia has never upheld a restrictive covenant, which was ancillary to an employer-employee relationship, when the

restrictive covenant could be applied to a geographic in which the employee performed no function for the employer." Cantol, Inc. v. McDaniel, 2006 WL 1213992 (E.D.Va. 2006); See also Simmons, 261 Va. at 581-82 (holding that the restrictive covenant was overbroad because the geographical scope potentially included the entire world). Thus, the overly broad geographic scope unduly burdens McDougall's ability to earn a living, and therefore, renders the non-compete unenforceable.

Additionally, the vagueness of the restrictive covenant makes it legally defective. Because portions of the non-compete are not triggered until the Company derives five percent of its gross revenue from a geographic region, McDougall is not in a position to determine in which geographic areas in which he is restricted from working. McDougall was not in a capacity to know the revenue numbers of the company, and certainly has no access to know those numbers now that he is gone from the company. This inability to determine whether or not the restrictive covenant applies renders it legally defective and unreasonable.

Ultimately, the non-compete severely burdens McDougall's opportunities to choose employment and earn a living. Accordingly, in Virginia, "subjecting an employee to such uncertainty offends sound public policy and thus runs afoul of the third part of the enforceability test." Lanmark Technology, 454 F.Supp.2d at 531. Therefore, because the covenant not to compete fails to meet all three requirements to enforce a restrictive covenant, any one of which would render it fatal, Plaintiff will not likely succeed on the merits, and any early injunctive relief should be denied.

iv. **Plaintiff will not likely succeed on the merits even if New York law applies.**

Alternatively, without waiving Defendant's objection to the validity of the choice of law provision of the Agreement, the Plaintiff is still not likely to succeed on the merits under New York law because the covenant not to compete is unenforceable even under that state's laws. Notably, restrictive covenants in employment contracts governed under New York law are "subject to more exacting scrutiny . . . [because] [p]ublic policy favors economic competition and individual liberty and seeks to shield employees from the superior bargaining position of employers." Mathias v. Jacobs, 167 F.Supp.2d 606, 611 (S.D.N.Y.2001). Under New York law, a restrictive covenant is reasonable if it "(1) is no greater than is required for the protection of a legitimate interest of the employer, (2) does not impose an undue hardship on the employee, and (3) is not injurious to the public." BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 388-89 (1999). This standard is almost verbatim to that applied in Virginia and a similar result will likely be reached if governed under New York law. "The issue of whether a restrictive covenant not to compete is enforceable by way of injunction depends in the first place upon whether the covenant is reasonable in time and geographic area." Ticor Title Ins. Co.. v. Cohen, 173 F.3d 63, 69 (2d Cir. 1999). "In this equation, courts must weigh the need to protect the employer's legitimate business interests against the employee's concern regarding the possible loss of livelihood." Id. Accordingly, because New York law applies essentially the same test when examining a restrictive covenant, the same analysis and result as discussed above regarding Virginia law would likely be reached if New York law governs.

**b. Plaintiff has not shown how it will suffer irreparable harm in the absence of a temporary restraining order.**

ForceX's claim of breach of the non-compete agreement fails to show how it will suffer irreparable harm in the absence of a temporary restraining order. There is no risk or threat of possible diminishment of goodwill with ForceX's customers. Since McDougall left the employ of the Plaintiff, he has not solicited any of Plaintiff's customers or clients. See Exhibit A at ¶ 17. Plaintiff has not provided any concrete evidence in its verified Complaint to refute this. Moreover, the risk of a threat to loss of goodwill with Plaintiff's customers is further diminished given the fact that Defendants are engaging in an entirely different line of work than McDougall was previously in with Plaintiff. Defendants' line of work focuses on systems integration for smart phones and various mobile devices to support non-ISR needs. Id. at ¶ 13. Conversely, when McDougall was employed at ForceX, he was the Vice President of the Airborne Division mainly focusing on ISR mapping applications for airborne units of the military. Thus, the work Defendants are currently engaged in is completely different and separate from the work McDougall previously did while with the Plaintiff. Plaintiff's allegations that it will suffer irreparable harm is merely speculative and any loss of goodwill with its customers is brought about by no fault of Defendants.

Additionally, Defendants are not engaging in any competitive activities with the Plaintiff that would demonstrate a threat of irreparable harm. Plaintiff's ill-informed allegation that McDougall obtaining a security clearance somehow demonstrates a threat of competition is misplaced and disingenuous. The contact made by USIS to the Plaintiff was regarding the standard five-year updating process of McDougall's security clearance which he has held for decades. Id. at ¶ 15. As Plaintiff surely knows, this is a process that every cleared employee must

14

go through as required by the government. Id. Moreover, Defendants have never developed a prototype ISR mapping product. Id. at ¶ 16. Defendants are not in the business of creating or developing such products. Accordingly, Plaintiff has failed to show that they will suffer irreparable harm in the absence of a temporary restraining order and its motion should be denied.

### c.   Entry of a temporary restraining order is against the public interest.

In Virginia (and New York), it is the public policy of the state to disfavor restrictive covenants. International Limousine Service, Inc. v. Reston Limousince & Travel Service, 68 Va. Cir. 84, 2 (Loudoun Cir. Ct. 2005); See also Omniplex World Services Corp., 270 Va. at 249 (holding that restrictive covenants are disfavored in Virginia as restraints on trade). In this case, the covenant not to compete does not protect the Plaintiff's legitimate business interests and, if enforced, precludes McDougall from maintaining his livelihood. McDougall operates a one-person systems engineering company, operating in a market completely separate and apart from the one he previously worked in while employed with the Plaintiff, has never used trade secrets or confidential information obtained while with Plaintiff after he left the company, and has never solicited employees or customers of the Plaintiff. Ultimately, given the strong public interest in Virginia against enforcing restrictive covenants, and the fact that such enforcement would prohibit McDougall from earning a living, entry of a temporary restraining is against the public interest and Plaintiff's motion seeking such relief should be denied.

### 3.  Expedited discovery is not warranted in this case as there are no unusual circumstances or conditions that would likely prejudice the Plaintiff from following the normal discovery timeline.

Other than submitting conclusory statements that they would like expedited discovery, Plaintiff has not submitted any evidence demonstrating a need or justification to depart from the traditional discovery timeline. Federal courts have held that expedited discovery is only

warranted "when some unusual circumstances or conditions exist that would likely prejudice the party if they were required to wait the normal time." Physicians Interactive v. Lathian Systems, Inc., 2003 WL 23018270, 4 (E.D.Va. 2003) (quoting Fimab-Finanziaria Magklificio Beillese Fratelli Fila S.p.A. v. Helio Import/Export, Inc., 601 F.Supp. 1, 3 (S.D.Fla.1983); Semitool, Inc., v. Tokyo Electron America, Inc., 208 F.R.D. 273, 275 (N.D.Cal.2002). Moreover, courts in the Eastern District of Virginia have held that in order to grant motions for expedited discovery, plaintiffs must meet the first two requirements for entry of a preliminary injunction. See Religious Tech. Ctr. V. Lerma, 897 F.Supp.260, 267 (E.D.Va.1995).

In this case, Plaintiff has not presented any evidence demonstrating unusual circumstances that exist to depart from the normal discovery procedure. Moreover, nothing currently exists that would result in prejudice to the Plaintiff if the Court follows the normal timeline. Plaintiff is unlikely to succeed on the merits of its claims and would not suffer irreparable harm if the temporary restraining order is not entered, thereby, diminishing the alleged need for expedited discovery.

In the alternative, if the Court finds that expedited discovery is warranted, Plaintiff's overly broad discovery requests should be curtailed. Plaintiff's Request for Production of Documents request documents that are unduly burdensome and wholly irrelevant to the pending case (e.g. "all cell phone, text message, and voicemail records from January 2, 2010 through the present"). These requests are unreasonable and, if granted, should be severely limited.[1]

---

[1] If the Court does grant expedited discovery to Plaintiff, which is not warranted, Defendants should be allowed to engage in similar expedited discovery in order to enable them to mount a proper defense to Plaintiff's injunctive efforts, which at this stage amount to nothing more than vague and unsupported accusations.

## Conclusion

Accordingly, Defendants respectfully request that this Court deny Plaintiff's Motion for

Temporary Restraining Order and Expedited Discovery.

Dated: June 3, 2011                              Respectfully submitted,


                                    _____/s/_____
                                    Declan C. Leonard, Esq. VSB 40292
                                    Nicholas R. Johnson, Esq. VSB 80525
                                    Berenzweig Leonard, LLP
                                    8200 Greensboro Drive, Suite 900
                                    McLean, Virginia 22102
                                    Telephone: (703) 760-0402
                                    Facsimile: (703) 462-5459
                                    dleonard@berenzweiglaw.com
                                    njohnson@berenzweiglaw.com
                                    *Counsel for Defendants Technology Fusion, LLC
                                    and Kelly McDougall*

17

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of June, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Wendy C. McGraw, Esq. VSB 37880
Hunton & Williams LLP
500 East Main Street, Suite 1000
Norfolk, VA 23510
Telephone: (757) 640-5300
Facsimile: (757) 625-7720
wmcgraw@hunton.com

Kenneth A. Weber
Benjamin Bodzy
Baker Donelson Bearman
Calwell & Berkowitz, P.C.
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, TN 37201
Telephone: (615) 726-5600
Facsimile: (615) 744-5640
kweber@bakerdonelson.com
bbodzy@bakerdonelson.com

_____/s/_____
Declan C. Leonard, Esq. VSB 40292
Nicholas R. Johnson, Esq. VSB 80525
Berenzweig Leonard, LLP
8200 Greensboro Drive, Suite 900
McLean, Virginia 22102
Telephone: (703) 760-0402
Facsimile: (703) 462-5459
dleonard@berenzweiglaw.com
njohnson@berenzweiglaw.com
*Counsel for Defendants Technology Fusion, LLC
and Kelly McDougall*
