# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

FORCEX, INC.,

        Plaintiff,

v.                                                   ACTION NO. 4:11cv88

TECHNOLOGY FUSION, LLC, and
KELLY MCDOUGALL

        Defendants.

## Memorandum Opinion

This matter is before the Court on Plaintiff's Motion for Expedited Discovery.[1] ECF No. 10. Plaintiff's Verified Complaint (ECF No. 1), filed May 25, 2011, alleges a number of claims against Kelly McDougall, individually, and as the sole member of the limited liability corporation Technology Fusion, stemming from the operation of Technology Fusion as a business that competes with Plaintiff in violation of McDougall's non-compete agreement. The complaint alleges diversity jurisdiction in this Court under 28 U.S.C. § 1332, and proper venue under 28 U.S.C. § 1391 as all the actions giving rise to the complaint occurred in the Eastern District of Virginia. For the reasons stated herein, the Court denied Plaintiff's Motion for Expedited Discovery. ECF No. 18.

### I.    Procedural History

Defendant Kelly McDougall ("McDougall") was formerly an employee of ForceX, Inc. in the position of Vice President, Airborne Division.[2] ForceX develops and manufacturers software

---

[1] The full title of Plaintiff's motion is "Motion for Temporary Restraining Order, Expedited Discovery, and Preliminary Injunction." ECF No. 10. Prior to the hearing, the Motion for Expedited Discovery was carved out of the larger motion, and this section alone is before the undersigned.
[2] The Verified Complaint states that McDougall was an employee of Plaintiff from February 26, 2009 through January 2, 2010. Compl. ¶ 8. McDougall asserts he was an employee of ForceX from July 2008 until December

applications for "airborne mission-execution platforms, battlefield and weapons management systems, and intelligence, surveillance, and reconnaissance operations." Compl. ¶ 10. While with ForceX, McDougall's responsibilities included business development, documentation training, and developing ForceX products. Id. ¶¶ 12-13. At the start of or during his employment, on February 26, 2009, McDougall signed an Employment, Confidential Information, and Invention Assignment Agreement ("Agreement"). The Agreement contained a non-compete agreement, as well as a confidentiality agreement. In relevant part, the Agreement states:

> [D]uring the course of my employment and for a period of thirty-six (36) months immediately following the termination of my relationship with the Company for any reason, whether with or without good cause or for any or no cause, at the option either of the Company or myself, with or without notice, I will not, without the prior written consent of the Company, (i) serve as a partner, employee, consultant, officer, director, manager, agent, associate, investor, or otherwise for, (ii) directly or indirectly, own, purchase, organize or take preparatory steps for the organization of, or (iii) build, design, finance, acquire, lease, operate, manage, invest in, work or consult for or otherwise affiliate myself with, any business in competition with or otherwise similar to the Company's business. The foregoing covenant shall cover my activities in every part of the Territory in which I may conduct business during the term of such covenant as set forth above. "Territory" shall mean (i) all counties in the State of New York, (ii) all other states of the United States of America and (iii) all other countries of the world; provided that, with respect to clauses (ii) and (iii), the Company derives at least five percent (5%) of its gross revenues from such geographic area prior to the date of termination of my relationship with the Company.

Compl. ¶ 17.

Plaintiff claims that Virginia is one of the states referred to in section (ii) in which ForceX derives over 5% of its gross revenue. Id. ¶ 18. The Agreement further contained a clause prohibiting McDougall from soliciting or encouraging any employees to leave ForceX for

2009. McDougall Decl. ¶ 2, Ex. A, ECF No. 16-1.

a period of thirty-six months, and contained a clause prohibiting McDougall from interfering with ForceX's contracts or relationships, including customer contacts for a period of thirty-six months. Id. ¶¶ 19-20.

Plaintiff claims McDougall is engaging in competitive behavior in violation of the Agreement. Plaintiff alleges that McDougall began competing through Technology Fusion as of the date of its registration with the State Corporation Commission on January 26, 2009, while McDougall was still employed at ForceX. Id. ¶ 29; State Corporation Comm'n Filing, ECF No. 1-2. McDougall argues, however, that simply forming the limited liability company does not prove competition. He did not begin working for Technology Fusion until much later, after he had left the employment of ForceX. McDougall Decl. ¶ 10. The registered address of Technology Fusion, LLC is the same address where McDougall operated as an employee for ForceX; 256 Mill Stream Way, Williamsburg, Virginia. McDougall also argues that neither Technology Fusion, nor he, individually, competed with ForceX. McDougall asserts that ForceX is engaged in a field of creating sensor interfaces to mapping applications that are intended to interface with airborne manned ISR missions and are specifically designed for mission-based assignments for military. Decl. ¶ 12. In contrast to this field, Technology Fusion does not compete in the ISR field, but focuses on mobile device system integration that does not address the needs of ISR missions. Id. ¶ 13.

Plaintiff claims they learned of Technology Fusion and McDougall's competition when ForceX was contacted by United States Investigative Services ("USIS") personnel seeking to interview ForceX as McDougall's former employer. Plaintiff asserts the request for an interview was initiated by McDougall's application to obtain additional security clearances to enable him to compete with ForceX. Compl. ¶ 32. In contrast, McDougall asserts that the USIS was

seeking to interview ForceX as part of the routine five-year updating process to maintain security clearances he already possessed. The request for interview was not initiated by McDougall's application for additional security clearances. Decl. ¶ 15. Additionally, Plaintiff learned that McDougall demonstrated a prototype ISR mapping application to one of ForceX's commercial partners at the request of one of ForceX's current customers. Id. ¶ 33. Also, McDougall claims the events in complaint paragraph 33 never occurred, and cannot form the basis of the litigation. Id. ¶¶ 16-17.

ForceX filed their Verified Complaint in this Court on May 25, 2011, alleging (1) breach of duty of loyalty and fiduciary duty, (2) breach of contract, (3) violation of the Virginia uniform trade secrets act, and (4) intentional interference with contract. ECF No. 1. On May 26, 2011, Plaintiff filed a Motion for Temporary Restraining Order, Expedited Discovery and Preliminary Injunction. ECF Nos. 8, 9, 10. After discussion with the Court, Plaintiff agreed to carve out of the larger motion arguments pertaining to expedited discovery that were heard before the undersigned on June 7, 2011. Because of the nature of the motion, the undersigned entered a short order denying Plaintiff's Motion to Expedite Discovery immediately following the hearing. ECF No. 18. This memorandum opinion follows to detail the Court's reasons for denying Plaintiff's motion.

## II. Standard of Review

Plaintiff seeks expedited discovery to determine the extent of Defendants' competitive activities and to prepare for a hearing on the Motion for Temporary Restraining Order and Motion for Preliminary Injunction. They are requesting the Court to order each Defendant to serve responses to sixteen Requests for Production within a week, and request that McDougall submit to a deposition within two weeks. Mot. at 2. Plaintiff argues the expedited deposition

4

and the requests for production are governed by two standards of review; the expedited deposition should be granted under the court's discretion in accordance with Federal Rule of Civil Procedure 30(a)(2)(A)(iii), and the requests for production should be governed under a similar standard that the Court would use in deciding whether to grant a preliminary injunction.

### A. Rule 30

Rule 30 provides that a "party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(2): (A) if the parties have not stipulated to the deposition and . . . the party seeks to take the deposition before the time specified in Rule 26(d) . . . ." Fed. R. Civ. P. 30(a)(2). Rule 26(b)(2) provides that the court may alter the frequency and extent of discovery as guided by the subsections in the Rule. Fed. R. Civ. P. 26(b)(2). Plaintiff argues that the language of the rule urges the Court to grant early depositions when they are requested and are consistent with Rule 26(b)(2). Plaintiff further argues that the advisory notes stress that the discovery timeline is simply to protect an unrepresented defendant; a problem not present in the current case. See Fed. R. Civ. P. 30 notes of advisory comm., 1970 amend.

The Court disagrees and finds that all requests for expedited discovery should be governed by the same standard, in accordance with other courts who have considered expedited discovery requests. The Court has "wide latitude in controlling discovery and . . . its rulings will not be overturned absent a showing of clear abuse of discretion." Rowland v. Am. Gen. Fin., Inc., 340 F.3d 187, 195 (4th Cir. 2003). The discovery rules contained in the Federal Rules of Civil Procedure provide tools for a court to adjust the discovery time outlined by Rule 26, and "if warranted, to expedite the time for responding to the discovery sought." Physicians Interactive v. Lathian Sys., Inc., 2003 WL 23018270, at *4 (E.D. Va. Dec. 5, 2003). Courts have found that immediate discovery "should be granted when some unusual circumstances or conditions exist

that would likely prejudice the party if he were required to wait the normal time." <u>Fimab-Finanziaria Maglificio Biellese Fratelli Fila, S.p.A. v. Helio Import/Export, Inc.</u>, 601 F. Supp. 1, 3 (S.D. Fla. 1983) (citing <u>Gibson v. Bagas Restaurants</u>, 87 F.R.D. 60, 62 (W.D. Mo. 1980)). Although the Defendants in the present case have been represented by attorneys even prior to the complaint being filed, circumstances do not exist which demonstrate to the Court that expedited discovery is warranted. Simply being represented by an attorney is not enough to warrant defeating the carefully drafted discovery timeline provided by the federal rules unless unusual circumstances exist.

**B. Unusual Circumstances and Expedited Discovery**

Courts have granted expedited discovery when "unusual circumstances exist." <u>See, e.g.</u>, <u>Fila</u>, 601 F. Supp. at 3. Determining when unusual circumstances exist that warrant granting expedited discovery is a somewhat murky question in the Fourth Circuit. Prior to 2008, many courts utilized a test for expedited discovery which relied heavily on the plaintiff sufficiently showing that it could meet the first and second prongs of the <u>Blackwelder</u> test required to obtain a preliminary injunction. <u>See, e.g.</u>, <u>Physicians Interactive</u>, 2003 WL 23018270, at *4; <u>Religious Tech. Ctr. v. Lerma</u>, 897 F. Supp. 260, 267 (E.D. Va. 1995). <u>Blackwelder</u> promulgated a standard used by the Fourth Circuit for thirty years to determine whether to issue a preliminary injunction. <u>Blackwelder Furniture Co. of Statesville v. Seilig Mfg.</u>, 550 F.2d 189 (4th Cir. 1977). The <u>Blackwelder</u> test provided that a court should consider the following in determining if a preliminary injunction should issue:

> (1) The likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied;
> (2) The likelihood of harm to the defendant if the preliminary injunction is granted;
> (3) The likelihood that the plaintiff will succeed on the merits; and

(4) The public interest in granting or denying a preliminary injunction.

Courts using the Blackwelder test have considered the first two prongs together as a "balancing of the hardships" test, and have weighed this against the third prong of success on the merits. The result became a sliding scale for the plaintiff; as the plaintiff's showing of a likelihood of irreparable harm grew weaker, their showing of success on the merits would need to be stronger to gain a preliminary injunction. See e.g., Religious Tech, 897 F. Supp. at 263; Klein v. Greenburg, 461 F. Supp. 653, 654 (M.D.N.C. 1978). See also Religious Tech, 897 F. Supp. at 267; Physicians Interactive, 2003 WL 23018270, at *4. Blackwelder, however, no longer governs the granting of emergency relief in the Fourth Circuit in the wake of the Supreme Court's decision in Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 374-75 (2008). See The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346-47, overruling Blackwelder, 550 F.2d 189, on reconsideration on other grounds, 2010 U.S. App. LEXIS 11627 (4th Cir. June 8, 2010). The Fourth Circuit has rejected the sliding scale approach of Blackwelder, in favor of a stricter standard which requires the plaintiff seeking a preliminary injunction to demonstrate by a "clear showing" each of the following factors:

(1) Plaintiff is likely to succeed on the merits at trial;
(2) Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief;
(3) The balance of the equities tips in plaintiff's favor; and
(4) An injunction is in the public interest.

The Real Truth About Obama, 575 F.3d at 346.

Since replacing the Blackwelder test with the Winter test, the Fourth Circuit has yet to provide clear guidance on which portions of the Winter test a court should look to when considering a motion for expedited discovery.

## C. Reasonableness Test and Preliminary Injunction Standard

In the absence of a specific standard delineated in the Federal Rules and in the Fourth Circuit, courts have considered two different standards in evaluating expedited discovery motions, one applying modified preliminary injunction factors and another "reasonableness," or "good cause" test. See L'Occitane, Inc., 2009 U.S. Dist. LEXIS 101819, at *5 (D. Md. Nov. 2, 2009) (citing Dimension Data North America, Inc. v. Netstar-1, Inc., 226 F.R.D. 528 (E.D.N.C. 2005)); see also Notaro v. Koch, 95 F.R.D. 402 (S.D.N.Y. 1982) (using the preliminary injunction test); Edgenet, Inc. v. Home Depot USA, Inc., 259 F.R.D. 385, 386 (E.D. Wis. 2009) (using the "good cause" test). Our sister court in Dimension Data adopted the "reasonableness" test, finding that "a standard based upon reasonableness or good cause, taking into account the totality of the circumstances," was the more appropriate standard and less burdensome than a preliminary injunction standard. Id. (internal citations omitted). This Court disagrees that the reasonableness standard is in line with the reasoning of Supreme Court and the Fourth Circuit when it sought to curtail emergency relief, and provide such relief only in unusual or extraordinary circumstances.[3]

Motions for expedited discovery are routinely considered either during a court's consideration of motions for a preliminary injunction or temporary restraining order, or directly before such motions in order to prepare for a preliminary injunction argument. See, e.g., CIENA Corp. v. Jarrard, 203 F.3d 312 (4th Cir. 2000); Religious Tech, 897 F. Supp. at 263; Fila, 601 F.

---

[3] Even under a reasonableness standard, Plaintiff has still failed to demonstrate that its request for expedited discovery should be granted. Plaintiff argued that the sixteen requests for production are limited, and only seek to gain information as to the extent of harm. Upon looking at the requests, however, the Plaintiff is seeking broad categories of information, including Request 9: "Produce all cell phone, text message, and voicemail records from January 2, 2010 through the present, for any cell phone or portable communication device used by Technology Fusion, LLC from January 2, 2010, through the present." Additionally, Plaintiff is seeking expedited depositions, but has provided no Rule 30(b)(6) notice to determine the extent or topics of the deposition. These requests are not narrowly tailored to obtain relevant information necessary for expedited discovery purposes. See Irish Lesbian & Gay Org. v. Giuliani, 918 F. Supp. 728, 730-31 (S.D.N.Y. 1996) (stating that courts "generally deny motions for expedited discovery when the movant's discovery requests are overly broad").

Supp. at 3; Klein, 461 F. Supp. at 653. It is most logical to treat the motion for expedited discovery under a similar standard as to the preliminary injunction standard. Prior to overturning Blackwelder, the Fourth Circuit adopted the preliminary injunction test for expedited discovery. Id. Although a minority approach, the preliminary injunction test corresponds more closely with the idea that granting court relief outside of the federal rules should be limited to unusual circumstances, and only where the plaintiff has made a clear showing that such relief is necessary. See St. Louis Group, Inc. v. Metals & Additives, Corp., 2011 U.S. Dist. LEXIS 5584, at *6 (S.D. Tex. Apr. 26, 2011) (analyzing different approaches and finding the preliminary injunction test in the minority).

In the absence of an endorsement from the Fourth Circuit as to the proper test for expedited discovery in the wake of Winter, this Court finds that it is more reliable to continue to use a formulation of the preliminary injunction test. The balancing of the hardships has been discounted by the Supreme Court in favor of proof on each of the four elements, and emphasis placed on a strong showing of success on the merits of the action by the Plaintiff, and a showing that irreparable harm is "likely" and not simply "possible." See Winter, 128 S. Ct. at 374-75. Mirroring the Fourth Circuit and Supreme Court's emphasis on the elements of a strong showing of merits and irreparable harm to the Plaintiff, this Court will use these two elements to determine if expedited discovery is warranted in this instance.

### III. Analysis

**A. Merits**

To demonstrate success on the merits on the allegations presented in the complaint, Plaintiff must establish that the Agreement signed by McDougall during his employment with Plaintiff is valid and enforceable, and that Defendant did compete both before and after his employment

9

with Plaintiff before Plaintiff may proceed with their counts.  Construing the facts in favor of Plaintiff, they have presented sufficient facts that McDougall willingly signed an employment agreement during his tenure with Plaintiff.   However, Plaintiff asserts that (1) New York law will govern this contract, and (2) under New York law, the covenant not to compete is reasonable and enforceable against McDougall.  The Agreement contains a choice of law clause stating that New York law will govern.  Plaintiff is correct that where the choice of law clause does not contravene public policy, it will usually be enforced.  See Senture, LLC v. Dietrich, 575 F. Supp. 2d 724, 727 (E.D. Va. 2008).  However,  Defendant asserts a convincing argument that under these circumstances, enforcing the choice of law provision in this contract is unreasonable, and a court would not enforce this agreement should it be determined that the parties did not intend for the designated law to govern the contract.  See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).  Under the circumstances and with the limited information now before the Court, it is unclear what the parties intended.  Plaintiff never operated an office or headquarters in New York, or is it clear they did regular business in New York.  Additionally, after McDougall signed his Agreement, the Agreement was rewritten before presenting the contract to other employees at ForceX.  The Court does not have enough information at this time to determine which state law should govern, but it is the Plaintiff's burden to make a strong showing that New York law governs, and they did not do so in this instance.

Additionally, it is unlikely in this Court's opinion, without further information, that the covenant not to compete would be found reasonable under either New York or Virginia law.  Under New York law, courts "adhere to a strict approach to enforcement of restrictive covenants," and they will be only enforced "to the extent necessary to protect the employer from unfair competition." Am. Inst. of Chem. Eng'rs v. Reber-Friel Co., 682 F.2d 383, 386-87 (2d

Cir. 1982). In determining whether to enforce a restrictive covenant, New York courts look at each covenant to determine if the employer has a "legitimate business interest necessary to sustain each" provision. Kelly v. Envolution Mkts, Inc., 626 F. Supp. 2d 364, 372 (S.D.N.Y. 2009). The Agreement cited above restricts McDougall from all counties in the State of New York, all other states in the United States, and countries of the World where the Plaintiff derives at least 5% of their gross revenue. This Agreement is extremely broad. It is also unclear to the Court that the Agreement is narrowly tailored to McDougall in anyway. There is no mention of McDougall's specific job or role in the corporation beyond somewhat vague titles of "airborne programs"; the types of tasks he was engaged in, or the products to which he was given access. The Plaintiff asserts that as a Department of Defense contractor, the bulk of ForceX's business is done in Virginia, where the DOD is located. Even though this is the case, the Plaintiff presented minimal evidence that the Agreement makes any consideration of McDougall's role in the company, or attempts to restrict McDougall only in those areas where he may actually threaten a legitimate business interest of Plaintiff.

Similarly, under Virginia law, the Plaintiff did not make a strong showing of success on the merits that the non-compete provision would be held enforceable against McDougall. When considering enforcement of a non-compete agreement, Virginia courts look at the restriction "in terms of function, geographic scope, and duration." Simmons v. Miller, 261 Va. 561, 581 (2001). The agreement will be enforced if it is narrowly drawn to protect the employer's legitimate interest (similar to New York's test), and is not unduly burdensome to the employee's livelihood. Id. As stated above, the provision of the agreement restricts an extremely broad geographic area, which without being further defined, could restrict the employee from ever operating a similar business or even in a similar company in the entire world. Additionally, there

is no mention of McDougall's role in the corporation within the Agreement, and the Agreement does not seem narrowly drawn. Without more presented by the Plaintiff, it is difficult for this Court to imagine upholding such an agreement based on the extremely broad language of the geographic scope alone. For these reasons, Plaintiff has failed to make a strong showing that they would succeed on the merits.

Plaintiff has also failed to show success on the merits that McDougall violated his fiduciary duty to the corporation. Plaintiff points to the incorporation filing that McDougall made, forming Technology Fusion prior to leaving the employ of ForceX. However, they presented no evidence that Technology Fusion was operational or directly competed with ForceX at any point prior to McDougall leaving ForceX. Simply forming a corporation that has no defined purposes prior to leaving another's employment does not reach the threshold of a strong showing of competition in this Court's opinion.

**B. Irreparable Harm to Plaintiff**

In order to succeed in gathering expedited discovery, the Plaintiff must also demonstrate that they would likely suffer irreparable harm in its absence. Plaintiff has failed to make such a showing. The Verified Complaint asserts that McDougall, through Technology Fusion, demonstrated a "prototype ISR mapping application to one of ForceX's commercial partners at the request of one of ForceX's customers. The product that McDougall demonstrated is competitive with ForceX's products." Compl. ¶ 33. Plaintiff focused on this incident as strong evidence that Defendants are actively engaged in soliciting business away from ForceX with products that directly compete with ForceX. Expedited discovery is necessary, Plaintiff asserts, to find out more about Defendants products and their potential customers in order to prevent

customer and revenue loss before it occurs through improper means. Defendant denied that this incident occurred.

Paragraph 33 constitutes the only factual assertion of irreparable harm made by Plaintiff. Although the potential loss of customers to ForceX would no doubt have an effect on their revenues and client good will, this is not an unusual type of harm. In all cases where a defendant is breaching their contract or non-compete agreement, the Plaintiff faces a risk of lost revenues or clients. The very point of non-compete agreements, and the litigation that follows in the wake of a breach of a non-compete agreement are remedies to this harm. The Plaintiff has made no showing that irreparable harm will occur in this instance without expedited discovery, nor have they demonstrated any unusual circumstances which would cause the Court to order a divergence from the typical discovery timeline. The Federal Rules of Civil Procedure provide a practical and reliable timeline for Plaintiff to receive all of the information that they have requested in this motion. Because they have not made a strong showing of success on the merits, or of irreparable harm, this Court denied Plaintiff's motion for expedited discovery.

The Clerk is DIRECTED to mail a copy of this Memorandum Opinion to counsel of record.

                                                                                 /s/
                                                            Tommy E. Miller
                            United States Magistrate Judge

Norfolk, Virginia
June 27, 2011